55 CCPA

**Ronald R. HOUSE and Yun Jen, Appellants,**

v.

**Harold R. MILLER, Appellee.**

**Patent Appeal No. 7992.**

United States Court of Customs and Patent Appeals.

June 27, 1968.

---

Evans Kahn, Stamford, Conn. (John T. Kelton, New York City, of counsel), for appellants.

Clinton F. Miller, Wilmington, Del. (S. Grant Stewart, Wilmington, Del., of counsel), for appellee.

Before WORLEY, Chief Judge, and RICH, SMITH, ALMOND and KIRKPATRICK *, Judges.

ALMOND, Judge.

House and Jen, hereinafter House, appeal from the decision of the Board of Patent Interferences pursuant to remand by this court for a determination of whether Miller, appellee, had proved beyond a reasonable doubt that the paper used in his tests contained a *wet-strength resin.*

The specific terms of the remand are set forth in the opinion of the court, 353 F.2d 252, 53 CCPA 863 as follows:

> The board declined to decide whether the paper used by Miller in his experiments contained a *wet-strength resin.* The presence of such a resin is a material limitation in the counts and for Miller to establish an actual reduction to practice of the invention defined by the counts, he must prove beyond a reasonable doubt that the paper contained this resin. Accordingly, we *remand* this case for a determination of this issue. [Emphasis added.]

In its decision on remand, the board held that the proof adduced by Miller was sufficient to establish beyond a reasonable doubt that the paper "broke" [1] used in the reduction to practice did contain a wet-strength resin, and that Miller was accordingly entitled to an award of priority. House has appealed this holding.

The single issue with which we are now confronted is whether the board erred in holding that the evidence proved beyond a reasonable doubt that

the paper involved in Miller's asserted reduction to practice contained a wet-strength resin, all other issues having been previously decided in Miller's favor.

The paper in question appears to have originated at the Ryegate Paper Company, and represented broke which could not be satisfactorily repulped because it contained wet-strength resin. The paper was allegedly obtained by Stanley Brunell, a technical sales representative for Hercules Powder Company,[2] who called on Ryegate Paper Company, and was given by him to Miller for the purpose of initiating laboratory work on the repulping of wet-strength broke.

Brunell was deceased at the time of taking testimony and the parties entered into a stipulation as to his testimony. The stipulated testimony is, in material substance, as follows:

1. Brunell was during 1953 a Technical Sales Representative of Hercules Powder Company and one of the accounts with which he worked in that capacity was the Ryegate Paper Company.

2. He (Brunell) prepared on June 25, 1953, Miller Exhibit 4 which is titled a "Service and Development Requisition" and transmitted it to Miller.

3. The paper broke referred to was broke containing Kymene 234, a wet-strength resin.

4. The requisition was prepared by him for the purpose of initiating laboratory work on the repulping of the wet-strength broke.

5. He (Brunell) personally delivered the sample of broke, which is the subject of the requisition, to Miller at Miller's laboratory located at Holyoke, Massachusetts.

Miller testified that the paper he used in his reduction to practice was that giv-

---

\* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. "Broke" is scrap paper, so called because the web "broke" on the paper-making machines.

2. Assignee of the Miller application.

en to him by Brunell. He also testified that he determined independently that the paper contained a wet-strength resin. Miller's testimony in this connection is as follows:

Q. 289 Mr. Miller, with respect to the wet-strength broke which you used in your experimental work which concerned the broke repulping problem, did you know of your own knowledge that this was a wet-strength paper containing at least one wet-strength resin?

A. Yes, I did.

Q. 290 Can you tell me how you arrived at that conclusion on the basis of your own knowledge?

A. Yes. I arrived at that conclusion after having performed the experiment I which is listed on page 22 of my notebook. Shall I proceed?

Q. 291 Please proceed.

A. In this experiment we tested the effect of caustic soda by heating the broke in a solution consisting of 1 gram of 98 per cent caustic soda and 400 milliliters of water. It was heated at a relatively high temperature, which was 195 degrees Fahrenheit and then placed in a water bath for one hour. At the end of this time the final temperature was 160 degrees Fahrenheit, and significantly at this point the paper could not be defibered satisfactorily. From the outcome of that test I would very definitely feel that the paper contained a wet-strength resin.

Q. 292 I take it that would be your opinion based on the experimental work that you have just referred to and taking into account your general knowledge of the chemistry of pulp and paper?

A. That is entirely correct.

There seems to be no doubt that Miller was familiar with the characteristics of the broke which he used in this test. It is equally clear that he is a competent and experienced chemist capable of making determinations in the paper chemical field. We are in agreement, therefore, with the observation of the board that:

It is apparent from the record that Miller was convinced that such a resin was present due to the behavior of the broke when he attempted to defiber it with caustic soda.

House assails the Miller testimony in its asserted failure to take into account the possibility that the broke used might well have been of the type which possessed wet strength but did not contain a wet-strength resin. Relying on the Casey text,[3] House points out methods for making wet-strength paper not involving resin, but which involve treating the paper with acid or with formaldehyde. Casey, however, deprecates the commercial use of such products, stating:

There have been a number of processes proposed for making wet-strength papers by treatment with acid and formaldehyde, but none has attained any degree of commercial success.

House also refers to another method of forming "vegetable parchment" involving treatment of paper with sulfuric acid. Relative to this type of product, Casey states:

In the manufacture of vegetable parchment, paper is passed through a bath of cold 55° Be sulfuric acid, after which the sheet is neutralized with ammonia and finally washed thoroughly with water. *The final product is a hard, dense sheet which is very useful as a greaseproof wrapping.* The product has considerable wet strength and *is sometimes used when a high degree of permanent wet strength is required.* [Emphasis added.]

3. Casey, J. B., Pulp and Paper Chemistry and Chemical Technology, Vol. 1, 1952 ed.

Greaseproof wrapping is that type of paper commonly used to wrap meats and may be appropriately referred to as butcher's wrap. Vegetable parchment is totally dissimilar to the product of Ryegate Paper Company, which is "hanging paper" or wall paper.

House does not controvert. the Casey statement that acid or formaldehyde-treated papers have not achieved substantial success. In view of this and in view of the fact that the testimony of Brunell and Miller both mentioned wet-strength resin at one point or another, we conclude that statements of the witnesses concerning wet-strength broke refer to broke containing a wet-strength resin. This conclusion is supported by the House application, which defines wet-strength webs as "webs composed of cellulose fibers bonded together by an absorbed content of wet strength resin."

We have considered the arguments advanced by appellants as set forth in their able brief and oral argument. We are not persuaded of error in the decision of the board that, on the record as a whole, Miller has borne the burden of establishing beyond a reasonable doubt that the broke used in the experiments of July 10, 1953 did include a wet-strength resin. In reaching this conclusion we have been mindful of the guideline enunciated by this court in Mann v. Werner, 347 F.2d 636, 52 CCPA 1578, wherein it is stated:

The proper approach, we believe, involves a reasoned examination, analysis and evaluation of all the pertinent evidence bearing on the question, to the end that a reasoned determination as to the credibility of the inventor's story may be reached. * * *

We perceive no basis for rational doubt that the paper broke which was the subject of Miller exhibit 4, personally delivered to Miller by Brunell, was paper containing Kymene 234 resin. We agree with the board that:

This exhibit shows on its face that the broke included Kymene 234.

We do not find a scintilla of evidence in this record indicative of the remotest suggestion that the broke used by Miller in his experiments did not contain a wet-strength resin. Affirmatively, there is, in addition to Miller's testimony, corroborating evidence that it did. In our view the record amply supports the conclusion of the board that:

Exhibit 4 indicates that a wet-strength resin as recited in the counts was present. Miller testified that the failure to defiber the paper by treatment with caustic soda led him to conclude that a wet-strength resin was present. It is our opinion that the stipulated testimony of Brunell, when considered along with Exhibit 4 prepared by Brunell and with all the circumstances provides the necessary proof that the broke used by Miller did include a wet-strength resin. * *

For the reasons hereinabove set forth, we affirm the decision of the board awarding priority of invention of the subject matter to Harold R. Miller, the junior party.

Affirmed.